*In re* JAY COOKE & CO.[2]

*(District Court, E. D. Pennsylvania.  December 22, 1883.)*

BANKRUPTCY—EQUITABLE ASSIGNMENT—SUBROGATION—CONSTRUCTIONS OF STATUTES—ACTS JUNE 22, 1874, (18 ST. AT LARGE, 142,) AUGUST 8, 1882, (ST. 1882, P. 376.)

The Soldiers' & Sailors' Orphans' Home proved a claim against the bankrupts, and subsequently, by act of congress, an appropriation was made to the home of the amount of the claim, and the attorney general was directed "to inquire into the necessity for and to take any measures that may be most effectual to enforce any right or claim which the United States have to this money, or any part of the same, now involved in the bankruptcy of Jay Cooke & Co."  In pursuance of a subsequent act, the home by deed transferred all its property, real and personal, to the Garfield Memorial Hospital.  *Held*, that the United States had not acquired any title to the claim, either by subrogation or equitable assignment, and that the hospital was entitled to receive the claim against the bankrupts.

In Bankruptcy.  Exceptions to examiner's report.

---

[1] See article by "English Lawyer" in the *Nation*, December 20, 1883.
[2] Reported by Albert Guilbert, Esq., of the Philadelphia bar.

The examiner (Joseph Mason) reported that on the twenty-fifth day of May, 1874, a claim for $11,350.97 had been duly proved against the bankrupts by the Soldiers' & Sailors' Orphans' Home.

By an act of congress approved June 22, 1874, it was provided, *inter alia*,—

"That the following sums be and they are hereby appropriated out of any moneys in the treasury not otherwise appropriated, to supply deficiencies in the appropriations for the services of the government for the fiscal year ending June 30, 1874, and for former years, and for other purposes, namely:

"For the Soldiers' & Sailors' Orphans' Home, Washington city, District of Columbia, to be expended under the direction of the secretary of the interior, eleven thousand three hundred and fifty dollars and ninety-seven cents: provided, that hereafter no child or children shall be admitted into said home except the destitute orphans of soldiers and sailors who have died in the late war on behalf of the union of these states, as provided for in section 3 of the act entitled 'An act to incorporate the National Soldiers' & Sailors' Orphans' home,' approved July 25, 1866: and provided, further, that no child, not an invalid, shall remain in said home after having attained the age of sixteen years.

"And the attorney general is hereby directed to inquire into the necessity for and to take any measures that may be most effectual to enforce any right or claim which the United States have to this money, or any part of the same, now involved in the bankruptcy of Henry D. Cooke, or of Jay Cooke & Co." 18 St. 142.

The act of July 25, 1866, referred to, provided, *inter alia*,—

"That said corporation shall have power to provide a home for, and to support and educate, the destitute orphans of soldiers and sailors who have died in the late war in behalf of the union of these states, from whatever state or territory they may have entered the national service, or their orphans may apply to enter the home, and which is hereby declared to be the objects and purposes of said corporation."

But there appears to be no provision in said act for any aid, assistance, or appropriation from or the exercise of any control over the management of the affairs of the corporation by the United States, except the provision that congress may at any time thereafter repeal, alter, or amend the act.

On December 15, 1879, the attorney general of the United States gave an official opinion to the secretary of the treasury, in answer to a letter from him as to an offer made to him to purchase the claim in question, from which opinion are taken the following extracts:

"On examining the statutes, it seems to me quite clear that an appropriation was made for the purpose of reimbursing the Soldiers' & Sailors' Orphans' Home for the moneys lost by the failure of Jay Cooke & Co., and that the United States treated the claim against that firm as one which was thereafter its own. This reappropriation was accepted upon these terms by the home when it received the money.

"The present legislation seems to me ample to enable the secretary of the treasury to demand and receive the amount of dividend from the bankrupt estate. In case there should be a refusal by that estate, it would also seem that the attorney general had, under the act, ample power to enforce the claim, and to collect, in the name of the United States, or that of the home,

the amount which was due as a dividend on account of the deposit, and pay the same into the treasury." Op. Atty. Gen. vol. 16, p. 407.

To obtain a direct payment of the dividends upon this claim to the United States is the purpose of the present petition. It avers that the sum appropriated has been paid by the United States to the said home, and that under the provisions of the act of congress of June 22, 1874, it was intended that the United States should be substituted for the said home, as to any claim which might exist for this amount against the said firm of Jay Cooke & Co. It was therefore contended by the attorney of the United States that the act referred to, *ipso facto*, effected an equitable assignment of the claim to the United States, but he was unprepared to prove either the fact of payment of the appropriation, or the matters set forth above in the opinion of the attorney general, as to the nature of the acceptance of the appropriation. It appeared, further, upon the hearing, that by an act of congress, approved June 20, 1878, an appropriation of $10,000 was made for the support of the said corporation, including salaries, etc., with the following proviso:

"Provided, that the institution shall be closed up and discontinued during the ensuing fiscal year, and that the title to the property, real and personal, shall be conveyed to the United States before any further payments are made to the trustees of the said institution." 20 St. 209.

And that by another act of congress, approved August 8, 1882, it was provided as follows:

"That the board of trustees of the National Soldiers' & Sailors' Orphans' Home, of the District of Columbia, are hereby empowered to transfer and convey all the property, real, personal and mixed, of the National Soldiers' & Sailors' Orphans' Home to the Garfield Memorial Hospital, located in said district; and the said Garfield Memorial Hospital is hereby empowered to sell and convey the same, and apply the proceeds to the object for which it was incorporated: provided that this act shall not be construed to make the United States liable in any way on account of said transfer, or the changing of the direction of the trust." St. 1881–82, p. 376.

On June 2, 1883, a petition for intervention, (in the proceedings pending as to the claim in question,) of the Garfield Memorial Hospital was presented, praying that it be substituted to the rights and title of said Soldiers' & Sailors' Orphans' Home, and that the award be made in its favor, and that its petition be taken and considered as an answer to the petition filed by the United States. This petition of intervention set forth, *inter alia*, the incorporation of said Garfield Memorial Hospital and the act of congress of August 8, 1882, (recited in the register's former report,) and that by deed dated October 2, 1882, duly executed and recorded, the trustees of the said orphans' home, conveyed, transferred, and assigned all the assets of that corporation, including said award, to the Garfield Memorial Hospital. A copy of said deed was produced *reciting* a resolution of the board of trustees of said orphans' home, to transfer and convey all the property real, personal, and mixed, of said orphans' home to said Gar-

field Memorial Hospital, and that for the purpose of carrying out the transfer and conveyance, David K. Cartter, president, and Marcellus Bailey, secretary of the board, be and they were thereby authorized and empowered to execute, acknowledge, and deliver for and in the name of said orphans' home, a deed or deeds conveying and transferring all of said property to said Garfield Memorial Hospital, *followed* by appropriate terms of conveyance of certain real estate in the city of Washington, described by metes and bounds, "and also all other property of said party of the first part, whether real, personal, or mixed, in said District of Columbia," but containing no specific reference to or statement of the claim against Jay Cooke & Co.

Pending the consideration of the subject before the register, the depositions of David K. Cartter, president, and Marcellus Bailey, treasurer of the orphans' home, were taken on behalf of the United States. By their testimony, it was proposed to prove the purpose and payment of the appropriation in the act of June 30, 1874, (recited in the former report,) and that upon its receipt it was agreed that the claim of the orphans' home against Jay Cooke & Co. should be transferred to the United States. The *purpose* of the appropriation and its *payment* are clearly established and are not disputed by any of the parties to the present controversy. As to the nature of the acceptance, the president testifies as follows:

"It was an understanding by me that inasmuch as there was an appropriation to supply a deficiency of Henry D. Cooke, the treasurer, whose funds as such officer to a like amount were on deposit with Jay Cooke & Co., at the time of their failure, that it would be reimbursed the United States out of the assets of the bankrupt firm. I cannot say with certainty as to the understanding of the board. I have not the records in my possession, which may show what the understanding was."

The treasurer, after testifying that the payment of the appropriation had been made to him as treasurer, in answer to the question whether said money was not received by said home with the understanding that the United States was to be entitled to receive all moneys that might thereafter be recovered from the firm of Jay Cooke & Co., says:

"I am not able to state whether such an understanding as that referred to in the interrogatory was had prior to the time I became connected with the home. I do not recall any action of the board of trustees after I became a member of it, touching this matter, nor do I believe there was any."

Several objections were made on behalf of the Garfield Memorial Hospital to these depositions, but as the testimony fails to prove any corporate action of the orphans' home as to the receipt of the money, it is unnecessary to consider them. While the orphans' home appears to have refrained from drawing the dividends from the bankrupt estate, there is no evidence of any actual assignment by it of the claim to the United States or that the appropriation of the act of June 20, 1878, of $10,000, with the proviso (recited in the former report) of conveyance of the property of the home to the United States

was accepted by the home, or that anything was done in accordance with the terms of said proviso. The subsequent act of August 8, 1882, was evidently a repeal of or substitute for this proviso.

The principal question for determination, therefore, seems to be simply whether the acceptance of the appropriation made by the act of June 30, 1874, worked an assignment of the claim of the orphans' home to the United States, or, in other words, whether such an assignment was an expressed or implied condition of the gift by the United States.

In the first place, it is to be observed that the sentence, "and the attorney general is hereby directed to inquire into the necessity for and to take any measures that may be most effectual to enforce any right or claim which the United States have to this money or any part of the same now involved in the bankruptcy of Henry D. Cooke, or of Jay Cooke & Co.," is, if taken literally, inexplicably obscure and without intelligible meaning; for the only money mentioned is the money then being appropriated, and how that can be involved in any bankruptcy, or that there can be any right or claim of the United States to be enforced with respect to *it*, is utterly incomprehensible. It is therefore very apparent that some words necessary to give coherence to the language have been omitted. Another part of the same statute, however, very clearly suggests what these words are.

Henry D. Cooke, it appears, was also treasurer of the reform school of the District of Columbia, and as such officer had deposited the funds belonging to said corporation also with Jay Cooke & Co. To supply the deficiency in this case occasioned by their failure, it was likewise provided by the act of June 30, 1874, (18 St. 146,) that the sum of $31,772.29 should be appropriated to reimburse the fund of the reform school in the District of Columbia, for work done and materials furnished in the erection and furnishing of the buildings and grounds of the same; and the attorney general was also directed "to take such measures as should be most effectual to enforce any right or claim which the United States have to this amount of money, or any part thereof, now involved in the bankruptcy of Henry D. Cooke, or of Jay Cooke & Co., the same having been in the hands of Henry D. Cooke as treasurer of said reform school at the time of his bankruptcy, and being then moneys belonging to the United States, and to inquire into this loss of the public moneys and ascertain who is responsible therefor, and institute such prosecutions as public justice may require, and that he report his proceedings therein to congress in his next annual report." Interpolating, therefore, the words "amount of" in the sentence quoted from the section of the orphans' home appropriation, and adding thereto (in accordance with the fact) "the same having been in the hands of Henry D. Cooke as treasurer of said Soldiers & Sailors' Orphans' Home," remove all ambiguity and obscurity of expression.

As I assume that it will not be pretended that the mere gift to this

charity, to relieve its temporary embarrassment, caused by the failure of its bankers, entitles the donor to its claim against the bankers as a matter of right, (irrespective of what gratitude might suggest,) the determination of the true construction and purpose of this *addendum* to the act of appropriation will be decisive of the present controversy.

Fortunately, as to the meaning of the similar words in the other appropriation, there is the judicial interpretation of the late judge of this court given in the present case, upon the presentation of the question by the direction of the attorney general of the United States, who, pursuant to the requirement of the statute, caused a proof to be made of the moneys due the reform school as a debt to the United States. In disallowing this proof (in an opinion filed February 4, 1875) the court, CADWALADER, J., said:

"The present purpose of tendering proof in the name of the United States is manifestly to obtain a statutory preference to the whole amount of the debt in question instead of a simple dividend, to which alone the local corporation, if the creditor, is entitled. I am of opinion that the debt is to the local corporation, and is not entitled to a preference. When the fund, of which that now claimed is the balance, was paid from the treasury of the United States to the treasurer of the local corporation, it became the money of that corporation, which is therefore the creditor entitled to make proof."

No appeal was taken from this decision. The local corporation subsequently made proof and appears to have received all the dividends, and no further claim of any nature appears to have been made by the United States therefor.

Now, while it is true that the present contention on behalf of the United States of subrogation to the claim of the creditor for a dividend (and not a preference) does not appear to have been made in argument or passed upon by the court, and therefore this opinion may not be justly considered as altogether conclusive of the present question, yet the absence of suggestion of such a right of the United States, and the subsequent payment of the dividends to the corporation claimant, show that no other view was entertained by the court, or the law officers of the United States, than that the whole object of the *addendum* to the act of appropriation was simply to endeavor to secure a preference in the distribution of the estate of the bankrupts. Such a purpose was entirely consistent with the spirit of the legislation, the relief of the charities; to obtain for them, if possible, in the name of the United States, a position in the court of bankruptcy, which in their own names could not be accorded to them. To attribute to the words used the further purpose of endeavoring to obtain for the United States reimbursement for the moneys then being donated, seems unwarrantable, because an express proviso that the charity assign its claim to the United States could have been readily added to the provisos already annexed to the gift. That there is no such proviso is conclusive that such was not the legislative intent. The addition of it would have rendered unnecessary any action by the attorney general, and would indeed have been inconsist-

ent with the claim for a preference; for the United States, as assignee, could have no greater right than its assignor. *U. S.* v. *Buford,* 3 Pet. 12.

It seems, therefore, reasonably clear that upon the assumption that because the United States had made large appropriations of money to both the orphans' home and the reform school, portions of which moneys were on deposit with the bankrupts at the time of their failure, it was supposed that possibly a claim might be sustained against their estate, as if the money had been deposited by the United States directly, and a priority in distribution be thus obtained. Congress, therefore, when making an appropriation to supply the loss by the insolvency, thought expedient to direct the attorney general to consider this view of the matter and endeavor to enforce it by appropriate action. Greater prominence was probably given to the case of the reform school, as appears from the greater particularity of specification of its supposed right in this respect, because it seemed to gather additional support from the fact that the reform school was an auxiliary to the administration of justice in the District of Columbia, was wholly supported by congressional grant, and was under direct governmental supervision; but by a suggestion of the right of the United States in either case it was not intended to stipulate for any return for the gift then made, and no such condition, it is respectfully submitted, can be found either by actual expression or implication in the act of appropriation.

The register therefore recommends that the prayers of the petition of the Garfield Memorial Hospital be granted, and that the costs of the present proceedings be paid by the trustee of the estate of Jay Cooke & Co., out of the dividends upon the claim of the National Soldiers' & Sailors' Orphans' Home.

The United States excepted to this report.

*J. K. Valentine,* Dist. Atty., and *Henry P. Brown,* Asst. Dist. Atty., for the United States.

*L. W. Barringer* and *Reginald Fendall,* for Garfield Memorial Hospital.

BUTLER, J.    Exceptions dismissed and report affirmed